## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **FREDDYS TOW AUTO SERVICE LLC, a Utah limited liability company,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **STATE OF UTAH DEPARTMENT OF TRANSPORTATION, a Utah governmental agency; COURTNEY MINCHEY, an individual; and DOES 1-5,** | **Case No. 2:23-cv-00296-JCB** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge

Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1]

Before the court is Defendants Utah Department of Transportation ("UDOT") and Courtney

Minchey's (now known as "Courtney Graham") ("Ms. Graham") (collectively, "Defendants")

motion for summary judgment.[2] The court held oral argument on the motion on January 13,

2025.[3] At the conclusion of the hearing, the court took the motion under advisement. The court

has carefully considered the parties' written submissions and counsel's oral arguments. Based

upon the analysis set forth below, the court grants Defendants' motion as to the federal claims

---

[1] ECF No. 16.

[2] ECF No. 31.

[3] ECF No. 54.

in this action and dismisses those claims with prejudice. The court also dismisses with prejudice the claims that Plaintiff Freddys Tow Auto Service LLC ("Freddys") abandoned at oral argument. However, the court denies Defendants' motion as to Freddys's remaining state-law claims because under 28 U.S.C. § 1367(c), and as the United States Court of Appeals for the Tenth Circuit strongly encourages, the court remands those claims to the state court from which this action was originally removed.

UNDISPUTED FACTS

## I.   Background

Federico Cuello ("Mr. Cuello") owns Freddys and other tow truck companies.[4] UDOT certified Freddys as a tow truck motor carrier business, which authorized Freddys to provide public towing services, in 2018.[5] Under Utah law, a tow truck operator must recertify every two years with UDOT if the operator wants to continue its tow truck services.[6] During the recertification process, UDOT audits the tow truck operator to ensure compliance with state and federal law.[7]

Prior to Freddys seeking its tow truck operator recertification, UDOT received complaints about how much Mr. Cuello's tow truck entities, including Freddys, were charging

---

[4] ECF No. 31-8; ECF No. 31-2 at 12:7-8, 13:22-14:11.

[5] ECF No. 31-2 at 7:17-8:8.

[6] Utah Code Ann. § 72-9-602(1)(b).

[7] *Id*. § 72-9-602(1)(a); ECF No. 31-9 at 25:19-26:10.

for tow services.[8] UDOT assigned Ms. Graham to investigate these complaints.[9] Ms. Graham met with Mr. Cuello and discussed with him issues regarding his fuel surcharges and that many of the tows were taking more than one hour, among other things.[10] Tows taking over one hour was a data point that UDOT considered to evaluate whether tow truck companies were overcharging the public in addition to ensuring that accidents were quickly cleared for safety reasons.[11]

In November 2022, Freddys sought recertification from UDOT.[12] On November 16, 2022, Ms. Graham informed Mr. Cuello about her uncertainty as to whether UDOT would approve Freddys's recertification because her supervisors were reviewing Freddys's tow tickets.[13] In response, Mr. Cuello said that he would take legal action against UDOT.[14] Ms. Graham replied that she was only explaining why the recertification process was taking longer than usual and requested that Mr. Cuello provide additional tow tickets that he had previously

---

[8] ECF No. 31-5 at 76:14-21, 78:19-23, 82:2-5, 83:24-85:2, 110:22, 130:14-132:9; ECF No. 31-7 at 2-8 of 111; ECF No. 31-9 at 37:21-22, 39:20-21; ECF No. 31-11 at 35:24-25. Freddys's hearsay objection is overruled because the complaints UDOT received are not being submitted for the truth of the matter asserted under Fed. R. Evid. 801(c). At issue here is not whether Freddys actually overcharged for its tow services but rather the basis UDOT had to look into whether Freddys had overcharged. In any event, a law-enforcement officer's "out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987).

[9] ECF No. 31-5 at 50:11-15.

[10] ECF No. 31-2 at 64:13-18; ECF No. 31-5 at 76:10-78:2, 78:8-11, 138:24-139:12; ECF No. 31-9 at 54:12-21.

[11] ECF No. 31-5 at 154:16-155:15.

[12] ECF No. 31-6 at 2-54 of 107.

[13] ECF No. 31-5 at 80:13-81:5; ECF No. 31-6 at 55 of 107.

[14] ECF No. 31-2 at 139:6-14; ECF No. 31-6 at 55 of 107.

mentioned in an email.[15] Mr. Cuello refused to produce the additional tow tickets and, instead, rejoined that he would "save [his] evidence for court."[16]

While UDOT was adjudicating Freddys's recertification, Freddys's certification lapsed for approximately 96 hours.[17] After concluding that the applicable rules and regulations precluded denial of recertification based on tows taking longer than one hour,[18] UDOT approved Freddys's recertification on November 22, 2022.[19] Although approved, UDOT failed to send Freddys's actual certification to Mr. Cuello.[20] Sadly, Mr. Cuello did not follow up with UDOT about not receiving his recertification,[21] and UDOT did not follow up with Mr. Cuello to notify him the recertification had been approved, but the physical UDOT recertification for Freddys was later provided to Mr. Cuello.

## II.    Procedural Background

Freddys filed this action originally in Utah Fourth District Court against Defendants.[22] Freddys's complaint alleged 10 causes of action: (1) 42 U.S.C. § 1983 for allegedly violating Freddys's constitutional right to equal protection under the Fourteenth Amendment; (2) Article I § 24 of the Utah Constitution for purportedly failing to abide by the Uniform Operations

---

[15] ECF No. 31-6 at 55 of 107.

[16] *Id.*

[17] ECF No. 31-11 at 38:1-8.

[18] ECF No. 31-9 at 20:1-7; ECF No. 31-11 at 32:24-33:6.

[19] ECF No. 31-5 at 121:15-17; ECF No. 31-6 at 105-06 of 107; ECF No. 31-11 at 12:25-14:1; ECF No. 31-14 at 3-4, 6 of 6.

[20] ECF No. 31-5 at 124:10-15.

[21] ECF No. 31-2 at 145:22-147:4.

[22] ECF No. 3-3.

Clause; (3) breach of an implied-in-fact contract; (4) declaratory judgment that UDOT had

violated a contract with Freddys; (5) breach of contract against UDOT regarding Freddys's

recertification and lost opportunities by not having the recertification; (6) breach of the implied

covenant of good faith and fair dealing; (7) promissory estoppel; (8) intentional interference

with economic relations; (9) attorney fees for Freddys's section 1983 claims and for bad faith

action under state law; and (10) civil conspiracy to commit the intentional tort of interfering

with economic relations.[23] Defendants removed the action to this court.[24]

Eventually, Defendants moved for summary judgment on all 10 of Freddys's causes of

action.[25] As to Freddys's federal claims (i.e., the first cause of action under section 1983 and

request for attorney fees under 42 U.S.C. § 1988), UDOT argued that neither a state agency nor

its employees sued in their official capacity qualify as a "person" under section 1983.[26] Ms.

Graham then argued that to the extent that Freddys was suing her in her official capacity, she

was entitled to qualified immunity.[27] UDOT further argued that: (1) it did not violate the Utah

Constitution; (2) no contract (implied or actual) existed between UDOT and Freddys, which

precludes any of the contract-based causes of action; (3) the Utah Governmental Immunity Act

bars intentional torts such as those alleged in causes of action 8 and 10; and (4) declaratory

judgment is a remedy, not a cause of action; (5) and promissory estoppel is not cognizable

against the government.

---

[23] *Id.*

[24] ECF No. 3.

[25] ECF No. 31.

[26] *Id.* at 24.

[27] *Id.* at 34-39.

Freddys opposed Defendants' motion.[28] As to the federal claims, however, Freddys's brief fails to discuss whether UDOT or Ms. Graham in her official capacity could each be a "person" under section 1983. Additionally, as to Ms. Graham in her individual capacity, Freddys entirely failed to mention the phrase "qualified immunity" much less present any argument about it. Instead, Freddys contends that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by favoring other tow truck companies over Freddys by applying the "one-hour rule" to Freddys and to no one else.[29] Defendants replied in support of their original motion for summary judgment.[30]

On January 13, 2025, the court convened oral argument on Defendants' motion for summary judgment.[31] There, Freddys's counsel conceded that neither UDOT nor Ms. Graham in her official capacity qualifies as a "person" under section 1983,[32] thereby abandoning any official capacity claims under section 1983. Freddys's counsel also abandoned the seventh and eighth causes of action.[33] The remainder of this opinion will not discuss further these abandoned claims and arguments. As to the remaining causes of action, however, the court and the parties had a lengthy discussion, after which the court took the matter under advisement.

After due consideration of the briefs, the authorities cited therein, and oral argument, the court grants summary judgment as to the federal claims (i.e., Freddys's section 1983 claim

---

[28] ECF No. 48.

[29] *Id*. at 34.

[30] ECF No. 52.

[31] ECF No. 54.

[32] ECF No. 55 at 12:1-9.

[33] *Id*. 90:23-91:6; 92:22-24; 95:23-96:3.

against Ms. Graham in her individual capacity and request for attorney fees) because Freddys cannot overcome Ms. Graham's qualified immunity defense. Accordingly, the court dismisses that section 1983 claim with prejudice and, *a fortiori*, the concomitant claim for attorney fees. At the same time, the court denies Defendants' motion for summary judgment on Freddys's unabandoned state-law claims and remands those claims to the state court from which this case was removed. After setting forth the applicable legal standards for deciding Defendants' motion for summary judgment, the court explains why: (I) Ms. Graham is entitled to qualified immunity (and, therefore, summary judgment); and (II) this court remands the remaining state-law claims that Freddys did not abandon at oral argument to the state court from which this case was removed.

LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof."[35] "When applying this standard, [the court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party."[36]

---

[34] Fed. R. Civ. P. 56(a).

[35] *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

[36] *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011) (quotations and citation omitted).

However, where, as here, a defendant asserts a qualified immunity defense, the court's review changes slightly.[37] "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."[38] "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."[39]

**ANALYSIS**

## I.    Freddys Cannot Overcome Ms. Graham's Assertion of Qualified Immunity.

Freddys fails to carry its heavy burden to overcome Ms. Graham's qualified immunity defense. "Once a defendant raises the defense of qualified immunity, the burden shifts to the plaintiff . . . [to] satisf[y] a heavy two-part burden."[40] First, Freddys "must demonstrate that [Ms. Graham] violated a [federal] constitutional or statutory right."[41] Second, Freddys must show "that the right at issue was clearly established at the time of [Ms. Graham's] unlawful conduct."[42] If Freddys cannot make both showings, then Ms. Graham is entitled to qualified immunity and, consequently, summary judgment.[43] However, if Freddys carries this heavy

---

[37] *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[38] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

[39] *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir.2008) (quotations and citation omitted).

[40] *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005) (alterations in original) (quotations and citation omitted).

[41] *Id.* (quotations and citation omitted).

[42] *Id.* at 1248 (quotations and citation omitted).

[43] *Id.*

burden, then "the burden shifts to [Ms. Graham] to prove that there are no genuine issues of material fact and that . . . she is entitled to judgment as a matter of law."[44]

Surprisingly, Freddys's memorandum in opposition to Defendants' motion for summary judgment does not even mention qualified immunity much less address each of the required elements to overcome Ms. Graham's qualified immunity defense.[45] This failure to even brief its burden, by itself, suffices to entitle Ms. Graham to qualified immunity and judgment as a matter of law. However, even if the court liberally reads Freddys's opposition memorandum as somehow addressing qualified immunity, Freddys cannot meet its burden on either element. Therefore, Ms. Graham is entitled to judgment as a matter of law.

A.  Freddys Cannot Show That Ms. Graham Violated the Equal Protection Clause.

Freddys falls well short of establishing that Ms. Graham violated the Equal Protection Clause because delaying issuance of Freddys's tow certification survives rational-basis scrutiny. A rational-basis standard of review of government action applies when a plaintiff claims to be arbitrarily treated differently than others who are similarly situated to the plaintiff based on reasons other than discrimination for being part of a suspect or quasi-suspect class or engaging in protected activity.[46] Here, Freddys is not claiming that Ms. Graham discriminated against it based on it being part of a suspect or quasi-suspect class or for engaging in protected activity. Instead, Freddys claims that Ms. Graham favored other companies over Freddys by

---

[44] *Id.* (quotations and citation omitted).

[45] ECF No. 48 (failing to even mention the phrase "qualified immunity" much less providing any analysis as to each required element that Freddys is required to establish).

[46] *Wasatch Equality v. Alta Ski Lifts Co.*, 55 F. Supp. 3d 1351, 1360 (D. Utah 2014), *aff'd* 820 F.3d 381 (10th Cir. 2016).

applying the "one-hour rule" to Freddys and no other tow company.[47] Therefore, the court

applies rational-basis scrutiny to Ms. Graham's actions.

When applying rational-basis scrutiny to government action "neither involving

fundamental rights nor proceeding along suspect lines[, the government action] is accorded a

strong presumption of validity."[48] This strong presumption of validity recognizes that the Equal

Protection Clause cannot turn federal courts into "second-guessers of all executive branch

decisions."[49] Indeed, as the Tenth Circuit observed,

> [T]he concept of a class-of-one equal protection claim could
> effectively provide a federal cause of action for review of almost
> every executive and administrative decision made by state actors. It
> is always possible for persons aggrieved by government action to
> allege, and almost always possible to produce evidence, that they
> were treated differently from others, with regard to everything from
> zoning to licensing to speeding to tax evaluation. It would become
> the task of the federal courts and juries, then, to inquire into the
> grounds for differential treatment and to decide whether those
> grounds were sufficiently reasonable to satisfy equal protection
> review. This would constitute the federal courts as general-purpose
> second-guessers of the reasonableness of broad areas of state and
> local decision making: a role that is both ill-suited to the federal
> courts and offensive to state and local autonomy in our federal
> system.[50]

The Tenth Circuit further observed that the improper "second-guesser" role of federal courts

becomes "magnified" in Equal Protection Clause actions dealing "with challenges to low-level

---

[47] ECF No. 48 at 34; *see also* ECF No. 3-3 at ¶¶ 119-20 (stating that Ms. Graham deprived
Freddys of equal protection by not issuing certifications based on the "one-hour rule" even
though Ms. Graham allegedly did not hold other companies to the same standard).

[48] *Heller v. Doe*, 509 U.S. 312, 319 (1993).

[49] *Wasatch Equality*, 55 F. Supp. 3d at 1366 (citing *Jennings v. City of Stillwater*, 383 F.3d
1199, 1210-11 (10th Cir. 2004)).

[50] *Jennings*, 383 F.3d at 1210-11.

government decision-making, which often involves a great deal of discretion," because "[i]f even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed."[51]

Given the strong presumption of validity that attaches to government action under rational-basis review, "a classification must be upheld against equal protection challenge if there is any *reasonably conceivable state of facts* that could provide a rational basis for the classification."[52] In terms of burden allocation, Ms. Graham "has no obligation to produce evidence to sustain the rationality of" government action.[53] Instead, Freddys bears the burden "to negative *every conceivable basis* which might support it," regardless of whether that basis "has a foundation in the record."[54] Freddys's opposition to Ms. Graham's motion for summary judgment comes nowhere close to meeting this burden because it entirely fails to mention the rational-basis standard and, consequently, fails to address—much less negate—every conceivable basis for Ms. Graham delaying the issuance of Freddys's tow certification. Nevertheless, as shown below, even if the court liberally reads Freddys's opposition memorandum, a rational basis exists for delaying issuance of Freddys's certificate even though the so-called "one-hour rule" lacks the force and effect of law.

Because Freddys's attack for the delayed issuance of its tow certifications is based on the so-called "one-hour rule" allegedly being outside of Ms. Graham's and her department's

---

[51] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-17 (10th Cir. 2011).

[52] *Heller*, 509 U.S. at 320 (emphasis added) (quotations and citations omitted).

[53] *Id.*

[54] *Id.* at 320-21 (emphasis added).

authority, the court begins by discussing the investigatory powers that the Utah Legislature provided to UDOT. The Utah Legislature empowered UDOT to "inspect, investigate, and certify tow truck motor carriers, tow trucks, and tow truck operators to ensure compliance with this chapter and compliance with Sections 41-6a-1406 and 41-6a-1407."[55] These statutes referenced in the prior sentence empower UDOT to investigate for purposes of ensuring compliance with, among other things, the statutes governing fees charged for tows that a tow truck operator performs. The statute providing investigatory powers to UDOT omits any limitations as to how investigations should be conducted or what criteria UDOT should or should not consider to determine whether additional scrutiny of a tow truck operator is warranted during the certification or recertification process. And where, as here, the legislative branch bestows upon an executive branch agency broad investigative authority, courts uniformly recognize the executive agency's ability to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."[56]

By illustration, in *Foxman v. Renison*,[57] the plaintiff alleged that the Internal Revenue Service ("IRS") had violated the Equal Protection Clause by singling him out for a tax audit because the IRS agent had a "dislike for dentists, especially those who, like [the plaintiff], deal exclusively with Medicaid patients."[58] The Second Circuit affirmed the district court's

---

[55] Utah Code Ann. § 72-9-602(1)(a).

[56] *United States v. Powell*, 379 U.S. 48, 57 (1964) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)); *see also United States v. Chemical Bank*, 593 F.2d 451, 456 (2nd Cir. 1979).

[57] 625 F.2d 429 (2d Cir. 1980).

[58] *Id*. at 431.

dismissal of the plaintiff's Equal Protection Clause claim precisely because the IRS was empowered to investigate not only on the suspicion of wrongdoing but also "just because it want[ed] the assurance that" the law was not being violated.[59] Moreover, the IRS had concerns about the plaintiff understating his tax burden.[60] Thus, conducting an audit of a taxpayer did not violate the Equal Protection Clause.[61]

Consistent with *Foxman*, UDOT has broad discretion from the Utah Legislature to investigate not only potential wrongdoing but also merely because it wants the assurance that Freddys is not violating the law. The record shows that Freddys had been the subject of complaints regarding how much it was charging for its tow services. In addition to the fuel surcharge, the amount of time Freddys was spending to complete a tow is a concern for evaluating the propriety of its towing costs. This, by itself, provides a rational basis for further investigating Freddys and delaying the issuance of its certification.

Nevertheless, Freddys contends that Ms. Graham lacked a rational basis because she inappropriately applied the "one-hour rule" against Freddys. As a threshold matter, Freddys's use of the term "one-hour rule" is a misnomer because it is not a "rule" (i.e., having the force and effect of law). Instead, the so-called "one-hour rule" was a criterion that Ms. Graham used

---

[59] *Id.* (quotations and citations omitted).

[60] *Id.*

[61] *Id.*; *see also Raheja v. Comm'r of Internal Revenue*, 725 F.2d 64, 67 (7th Cir. 1984) (rejecting Equal Protection Clause claim for alleged arbitrary and selective audit of taxpayer because IRS has the ability to investigate for wrongdoing or to satisfy itself that no wrongdoing occurred); *Small Bus. Admin. v. Barron*, 240 F. Supp. 434, 445 (W.D.S.C. 1965) (recognizing that Small Business Administration had authority to investigate violations of law for which the agency was responsible and because it merely wanted assurances that the law was not being violated).

to determine whether further investigation was warranted, and if Ms. Graham's use of the inaptly named "one-hour rule" creates an equal protection problem, law enforcement efforts are doomed because law enforcement of both a criminal and an administrative nature develop criteria based on training and experience to determine whether to further investigate a subject.

For example, suppose that a law enforcement officer observes that a home in a quiet neighborhood experiences a steady stream of visitors who pull up to the house, exit their vehicle, go into the house, remain inside for between one and two minutes, and come out with a small bundle of something in their hands. Based on that officer's training and experience, such a pattern may cause the officer to further investigate whether the home is being used to sell illicit narcotics. Notice, however, that the officer decided to investigate further even though there is may not be any federal, state, or local law declared by any legislative body, executive agency, or court that would preclude such a traffic or use pattern at the home. That this pattern at the home raises suspicion and causes a law enforcement officer to investigate further does not mean that the officer has either created the "residential foot traffic pattern rule" or improperly imbued it with the force and effect of law. To the contrary, a duly authorized investigator using her/his training and experience to decide when circumstances warrant further investigation does not, without more, create a cause of action under the Equal Protection Clause.

Using the so-called "one-hour rule" as a reason to further investigate Freddys's towing practices is all Ms. Graham did here. UDOT was aware of complaints concerning Freddys's towing practices and observed that most of those tows were taking longer than one hour to perform. But instead of treating the inaptly designated "one-hour rule" as a mandate with the

force and effect of law that could deprive Freddys of a certification, Ms. Graham merely used

the one-hour mark as part of the criteria to determine whether further investigation into

Freddys's towing practices was warranted. The "one-hour rule" did not result in UDOT

denying Freddys's certification because UDOT ultimately certified Freddys's towing

operations. And, even though there was a delay in Freddys receiving its certification from

UDOT, nothing in the law requires UDOT's investigation to be concluded by the time a tow

truck operator's prior certification expires. Indeed, second guessing the timing and intensity of

UDOT's investigation into towing practices is precisely the function that federal courts are not

allowed to perform under the auspices of rational-basis scrutiny under the Equal Protection

Clause. Accordingly, Freddys cannot show that Ms. Graham lacked a rational basis to further

investigate its towing practices especially given the breadth of UDOT's investigative authority

and because Ms. Graham can permissibly rely on her training and experience to decide whether

to investigate further. Therefore, Freddys has failed to establish that Ms. Graham violated the

Constitution, which entitled her to both qualified immunity and summary judgment.

    B.   <u>Even if Freddys Could Prove a Constitutional Violation, It Cannot Show That the Violation Was Clearly Established</u>.

    Even if Freddys could show that using the "one-hour rule" to further investigate

Freddys and delay issuance of its certification was a constitutional violation, it cannot show

that said violation was clearly established.

> A clearly established right is one that is sufficiently clear that every
> reasonable official would have understood that what he is doing
> violates that right. We do not require a case directly on point, but
> existing precedent must have placed the statutory or constitutional
> question beyond debate. Put simply, qualified immunity protects all

but the plainly incompetent or those who knowingly violate the law.[62]

Even assuming, *arguendo*, that Ms. Graham violated the Constitution, Freddys has failed to provide, and this court cannot find, any authority that is remotely close to the facts and circumstances of this action that would have put Ms. Graham on notice that her conduct violated the Equal Protection Clause. In fact, Freddys's opposition to Ms. Graham's motion fails to even mention at all the "clearly established" requirement much less provide any relevant authority. And Freddys's counsel at oral argument failed to provide any case remotely close to the facts of this one in support of Freddys's after-the-fact attempt to meet its burden. In any event, the closest case that the court can find to this action is *Foxman*, which clearly shows that a decision to perform an audit is well within an executive agency's ability to not only investigate possible violations of law but also to investigate solely to assure that the law is not being violated.[63] Thus, the existing authority strongly suggests that Ms. Graham's actions were constitutional. Accordingly, Freddys cannot show that the alleged constitutional violation in this action is clearly established, which entitles Ms. Graham to qualified immunity and summary judgment.[64]

---

[62] *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (quotations and citations omitted).

[63] 625 F.2d at 431.

[64] Because Ms. Graham is entitled to summary judgment on Freddys's first cause of action under section 1983, Ms. Graham is also entitled to summary judgment as to the portion of Freddys's ninth cause of action seeking attorney fees that are entirely based on the success on Freddys's section 1983 claim.

## II.    This Court Remands All State Claims That Freddys Did Not Abandon at Oral Argument.

Although this court would prefer to address the remaining state-law claims in this action that Freddys still contests, this court cannot and should not ignore the Tenth Circuit's clear admonitions regarding when this court should remand to state court after deciding the federal claims. In *Koch v. City of Del City*, the Tenth Circuit affirmed the district court's remand of all remaining state-law claims where the only federal claim decided on summary judgment was, like this case, decided under section 1983.[65] In affirming the post-summary-judgment remand to state court, the Tenth Circuit quoted its oft-used phrase that "[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims."[66] The court notes that the Tenth Circuit's statement is grounded in, among other things, the United States Supreme Court's statement that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.[67]

As to the remaining state claims, the court is cautious about deciding them without knowing how the Utah Supreme Court or Utah Court of Appeals would handle these issues. For example, the court is unsure how either of the aforementioned appellate courts would address the three-part test in *Spackman ex rel. Spackman v. Board of Education of Box Elder*

---

[65] 660 F.3d 1228, 1248 (10th Cir. 2011).

[66] *Id.* (emphasis added) (quotations and citation omitted).

[67] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (footnotes omitted).

*County School District*,[68] under the facts of this case. Also, the court is cautious about deciding whether a tow certification creates an implied-in-fact contract between the tow truck operator and the government based on a question that the Utah Court of Appeals left open in *Heideman v. Washington City*.[69] Consequently, as much as the court would like to address all of these issues, the court will exercise its discretion according to the clear preference of its federal superior courts. Therefore, the unabandoned state claims (i.e., Freddys's second, third, fourth, fifth, sixth, ninth (as to state law claims), and tenth causes of action) are remanded to the state court from which this action as originally removed.

**ORDER**

For the reasons stated above, the court HEREBY ORDERS:

1.    Freddys's abandoned claims (i.e., Freddys's official capacity claims under section 1983 and its seventh and eighth state-law causes of action) are DISMISSED WITH PREJUDICE.

2.    Defendants' motion for summary judgment[70] is GRANTED as to Freddys's federal claims (i.e., Freddys's section 1983 claim against Ms. Graham in her individual capacity and concomitant request for attorney fees), and those claims are DISMISSED WITH PREJUDICE.

---

[68] 16 P.3d 533 (Utah 2000).

[69] 155 P.3d 900, 908 (Utah Ct. App. 2007).

[70] ECF No. 31.

3.      Defendants' motion for summary judgment[71] is DENIED as to Freddys's

unabandoned state-law claims (i.e., Freddys's second, third, fourth, fifth, sixth,

ninth (as to state-law claims), and tenth causes of action), and those claims are

REMANDED to the state court from which this case was removed.

IT IS SO ORDERED.

DATED this 7th day of March 2025.

                                BY THE COURT:

                                _____
                                JARED C. BENNETT
                                United States Magistrate Judge

---

[71] *Id.*